**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

TONY TANG and GILBERTO TORRES
GOMEZ, on behalf of themselves and all
others similarly situated,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

</td><td>

Case No.:  1:23-cv-9885

**<u>CLASS ACTION COMPLAINT</u>**

</td></tr>
</table>

## INTRODUCTION

This is a class action lawsuit under the Tucker Act to recover biometric fees that United States Citizenship and Immigration Services ("USCIS") unlawfully charges millions of immigrants—in many instances more than once—in contravention of its statutory and regulatory mandates. The fees violate the authorizing statute, which requires USCIS to set fees at the level needed to recover the costs of its correlated services, because USCIS itself admits that these fees are set much higher than that maximum level. And the fees violate USCIS's own implementing regulation because for millions of applicants, USCIS does not provide the services that the regulation requires it to provide to collect these fees. Immigration applicants who are required to pay the biometric fee end up paying this $85 fee—often more than once—on top of the hundreds of dollars of other fees charged by USCIS. Despite USCIS's repeated public statements that filing fees are not intended to generate general revenue, these inflated and unauthorized biometric fees generate millions of dollars in surplus revenue for the agency each year.

In connection with certain types of immigration applications, USCIS charges $85 biometric fees "to pay for [the applicants'] background checks and have [the applicants'] biometric

information captured." 8 C.F.R. § 103.7(b)(1)(i)(C) (Oct. 1, 2020).[1] The biometric information includes fingerprints, a photo, and a signature sample.[2] This fee is in addition to the fee for the application itself, which must be submitted simultaneously with the biometric fee. Because the naturalization process generally requires applicants to submit at least a few different types of applications requiring the biometric fee (*e.g.*, for permanent residence, for renewal of permanent residence, and for naturalization), most applicants pay the $85 fee multiple times. When USCIS does not re-collect biometrics in connection with an application, applicants receive a notice from USCIS ("Biometric Notice") stating that their biometric information will not be captured again because USCIS already has such information on file. This notice also informs applicants that the $85 fee that the applicant paid will *not* be refunded. Since at least 2016, millions of applicants have received a Biometric Notice indicating that the agency will not re-collect their biometric information but refusing to refund the biometric fee.

Under the Tucker Act, Plaintiffs may assert an illegal exaction claim against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1345(a)(2). Here, USCIS's collection of the biometric fee violates both Congress's authorizing statute and the agency's implementing regulation.

---

[1] USCIS is currently using the fee regulations it enacted in a 2016 rulemaking process. USCIS is not using the current regulations published in the Code of Federal Regulations, which it attempted to enact in a 2020 rulemaking process. Although USCIS published a final rule to adjust its fee schedule on August 3, 2020, to become effective on October 2, 2020, *see U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 85 Fed. Reg. 46788 (Aug. 3, 2020), that rule was enjoined before implementation and its effective date stayed, and thus it has not taken effect, *see Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 526 (N.D. Cal. 2020); *Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 41 (D.D.C. 2020). Even though USCIS has abandoned the 2020 rule, it remains in the CFR. USCIS has confirmed that it continues to collect fees pursuant to the pre-October 2, 2020 version of the regulation that it promulgated during the 2016 rulemaking process. *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 86 Fed. Reg. 7493, 7493 (Jan. 29, 2021).

[2] *See, e.g.*, USCIS, *Preparing for Your Biometric Services Appointment* (last visited Nov. 4, 2023) https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment.

*Statutory Violation*. The $85 biometric fee violates 8 U.S.C. § 1356(m), which authorizes USCIS to set its fees. Specifically, that statute provides that "fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services." But the $85 biometric fee is set well above the level that will ensure recovery of the full costs of providing the services allocated to the biometric fee. Since 2010, the biometric fee has been set at $85. In a 2016 proposed notice of rulemaking, USCIS confessed that it spends only $75 per applicant to process biometrics. Nevertheless, it kept the fee at $85 citing an unquantified and unsupported "uncertainty in the biometric services."[3] And that disclosure still overstated the agency's actual costs because the analysis that USCIS undertook to arrive at a cost of $75 per application did not take into account the millions of applications for which USCIS did not actually provide some or all of the biometric services associated with the fee. USCIS's more recent disclosures indicate that when the millions of annual reuses are taken into account, setting the biometric fee at approximately $55 would be sufficient to recover the correlated costs actually incurred by USCIS.[4] Thus, by setting the biometric fee at $85—when the "full costs" of providing biometrics services are significantly lower—USCIS exceeded its authority under 8 U.S.C. § 1356(m).

*Regulatory Violation*. The regulation authorizing USCIS to charge the $85 biometric fee *requires* it to use that amount to "capture[]" the applicant's biometrics and to "pay" for the applicant's background check. 8 C.F.R. § 103.7(b)(1)(i)(C). Charging the $85 fee when USCIS does not capture biometrics or does not order an FBI background check contravenes USCIS's own

---

[3] *U.S. Citizenship and Immigration Services Fee Schedule*, 81 Fed. Reg. 26904, 26917 (May 4, 2016).
[4] *See infra* ¶¶47-48; *see also* USCIS, *Immigration Examinations Fee Account IEFA Fee Review Supporting Documentation* at 32 (Jan. 2023) (hereinafter "2023 IEFA Review"), available at https://www.regulations.gov/document/USCIS-2021-0010-0028.

3

implementing regulation. Charging the $85 biometric fee without providing those services to the paying applicant is unlawful.

## THE PARTIES

1.      Tony Tang is a naturalized U.S. citizen who immigrated from Canada and currently owns a marketing agency in New York City. He resides in New York City, New York.

2.      Gilberto Torres Gomez is a naturalized U.S. citizen who immigrated from Mexico and currently works as a project administrator for a construction consulting company in New York City. He resides in New York City, New York.

3.      Defendant United States of America, through the Department of Homeland Security and USCIS, charges biometric fees.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a)(2). Each Plaintiff and putative class member has multiple illegal exaction claims against the United States, none of which exceeds $10,000.

5.      The Court has personal jurisdiction over all parties to this lawsuit, and venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1402(a)(1) because both Plaintiffs reside in the Southern District of New York.

## FACTUAL BACKGROUND

### 1. Immigrants must pay the biometric fee when filing certain USCIS applications, while USCIS frequently does not re-collect biometric and does not pay for background checks.

6.      The path to citizenship is lengthy, often requiring the immigrant to submit several different applications to USCIS, including an application for permanent residence ("green card"), an application to renew the green card, and an application for naturalization. Certain applications,

including those listed above, require the simultaneous payment of a special $85 fee, separate from the application fee itself, for "biometric services."[5]

7.      USCIS has explained that the $85 biometric fee covers four costs: (1) "FBI Name Checks"; (2) "FBI fingerprints"; (3) "Application Support Center (ASC) contractual support"; and (4) "Biometric service management overall, including federal employees at the ASC locations."[6]

8.      The first time the immigrant submits an application to USCIS that requires payment of the $85 biometric fee, the immigrant will receive an appointment at an ASC, where immigration officers and/or contractors will collect their biometric information (*i.e.*, fingerprints, photo, and signature).[7] This information is submitted to the FBI for a "full criminal background check."[8] USCIS also submits the applicant's name to the FBI for an "FBI Name Check," during which the applicant's name is checked against the FBI's Universal Index of "personnel, administrative, applicant, and criminal files compiled for law enforcement purposes" within its Central Records System.[9]

9.      Here is an example timeline of the applications that an immigrant who applies for citizenship through marriage to a U.S. citizen might submit, and the biometric fees they might pay,

---

[5] 8 C.F.R. § 103.7(b)(1)(i)(C) (Oct. 1, 2020). The applications that require the $85 biometric service fee can be found in the USCIS Fee Schedule, Form G-1055, available at https://www.uscis.gov/sites/default/files/document/forms/g-1055.pdf (last accessed Nov. 4, 2023).

[6] *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 84 Fed. Reg. 62280, 62302 (Nov. 14, 2019); *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 88 Fed. Reg. 402, 484 (Jan. 4, 2023).

[7] *See, e.g.*, USCIS, *Preparing for Your Biometric Services Appointment* (last visited Nov. 4, 2023) https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment ("After you file your application, petition, or request, if you need to provide your fingerprints, photograph, or signature, we will schedule your biometric services appointment at a local Application Support Center (ASC).").

[8] USCIS, *Policy Manual* at Vol 12, Part B, Chapter 2 – Background and Security Checks (last visited Nov. 4, 2023), available at https://www.uscis.gov/policy-manual/volume-12-part-b-chapter-2. The "full criminal background check" cost is covered by the (1) "FBI Name Checks" and (2) "FBI fingerprints," categories mentioned in the preceding paragraph.

[9] *Id.*; *see also* Wikipedia, *FBI Name Check* (last visited Nov. 4, 2023) https://en.wikipedia.org/wiki/FBI_Name_Check.

11915636v1/017867

from their initial application for permanent residence through their final application for naturalization:

| Date | Event | Biometric Fee |
|---|---|---|
| January 1, 2020 | Immigrant files I-485 application for conditional permanent resident status | $85 |
| May 1, 2021 | USCIS grants the I-485 application for conditional permanent residence (valid for 2 years) | N/A |
| May 1, 2023 | Immigrant files I-751 application to remove conditions on residence | $85 |
| May 1, 2024 | Immigrant files N-400 application for naturalization | $85 |
| February 1, 2025 | USCIS grants both the I-751 and the N-400 applications[10] | N/A |

*Table 1.*

10.     In the above example, the applicant paid the $85 biometric fee three times. Payment of the $85 fee is mandatory. If an application requires the biometric fee, USCIS will automatically reject the application if it is not accompanied by the $85 payment.[11]

11.     Once USCIS receives an applicant's biometrics, it often does _not_ collect biometrics again when the applicant files another qualifying application and pays another $85. This is because USCIS has a policy and practice of "reusing" the previously collected biometrics. USCIS began this practice no later than March 2016, and possibly much earlier.[12] USCIS has also "expanded" its biometric reuse policy in response to the COVID-19 pandemic and now reuses around 1.9 million biometric sets every year:

---

[10] Conditional permanent residents may apply for naturalization before their I-751 applications are granted. USCIS's processing of I-751 applications is backlogged, and it is common for applicants to have I-751 applications and N-400 applications pending at the same time. *See, e.g.*, DHS, *USCIS' Processing of Concurrently Pending Forms N-400 and Forms I-751* (last visited Nov. 4, 2023), available at https://www.dhs.gov/publication/uscis-processing-concurrently-pending-forms-n-400-and-forms-i-751.

[11] 81 Fed. Reg. at 26932 ("USCIS will reject an application that does not include the required biometric services fee.").

[12] *See Matter of M-K- Appeal of Vermont Service Center Decision Application: Form I-821, Application For Temporary Protected Status*, 2017 WL 2778254, at *2 (June 8, 2017) (discussing a March 2016 Biometric Notice from USCIS informing applicant that he would not need to visit an ASC for biometric services as his "previously captured fingerprints and other biometrics" would be reused).

a.  On May 4, 2021, Representative Elaine Luria asked USCIS about delays in biometrics appointment wait times experienced by applicants in her district, including a reported 72,000 case backlog at the USCIS center in Washington, DC. On May 18, 2021, the Acting Director of USCIS informed Representative Luria that the delays resulted from COVID-related center closures, and that USCIS's efforts to reduce the backlog included "*expand[ing] the reuse of previously collected biometrics*." Specifically, USCIS reported that "[s]ince reopening in July 2020 USCIS has scheduled over 2.3 million ASC appointments and *reused previously submitted biometrics on over 1.6 million applicants*."[13]

b.  On September 3, 2021, Representatives Kathy Manning and Scott Peters sent a letter to USCIS urging the agency to speed up green card processing. In an October 6, 2021 response, the USCIS Director indicated that USCIS had "*reuse[d] biometrics for close to 2 million applicants since March 2020*."[14]

12.  In the above example, the applicant would have had their biometrics captured after submitting their I-485 application in 2020 but would likely not receive a second or third appointment at an ASC after submitting their I-751 and N-400 applications in 2023 and 2024. In other words, the second and third biometric fees paid by this applicant would likely not be accompanied by any new ASC-related biometric services. Nonetheless, USCIS would keep those two $85 payments in their entirety.

13.  In addition to reusing biometric information, USCIS also reuses background checks. Under USCIS policy, FBI fingerprint background checks and FBI name checks remain valid for 15 months.[15] In the above example, the applicant submitted an N-400 application for

---

[13]  Tracy L. Renaud, *Letter to Rep. Luria* (May 18, 2021) (emphasis added), available at https://www.uscis.gov/sites/default/files/document/foia/Biometrics_Appointments-Representative_Luria.pdf.

[14]  Ur Jaddou, *Letter to Rep. Manning* (Oct. 6, 2021) (emphasis added), available at https://www.uscis.gov/sites/default/files/document/foia/Processing_times_for_permanent_resident_applications-Representative_Manning.pdf.

[15]  USCIS, *Policy Manual* at Vol 12, Part B, Chapter 2 – Background and Security Checks (last visited Nov. 4, 2023), available at https://www.uscis.gov/policy-manual/volume-12-part-b-chapter-2 (noting that "[f]ingerprints are valid for 15 months from the date of processing by the FBI"); *id.* (noting that FBI name check responses remain valid for the "duration of the application for which they were conducted" *and* that they can be used to support additional applications "for 15 months from the FBI process date"); *see also, e.g.*, *Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention*, 72 Fed. Reg. 56832, 56846 (Oct. 4, 2007) ("[S]tandard USCIS policy has been that the FBI's clearance of a person's fingerprints is valid for 15 months . . . ."); USCIS, *Background Checks* (last visited Nov. 4, 2023) https://www.uscis.gov/adoption/suitability-and-home-study-information/background-checks ("[T]he validity period of background check and clearance based on the collection of your fingerprints is 15 months.").

naturalization within 12 months of their I-751 application. That means that any FBI background check or FBI name check conducted in connection with the I-751 application likely would also be used to support the N-400 application. In other words, the third biometric fee paid by this applicant in connection with their N-400 application would have likely been charged without USCIS providing *any biometric services at all* to the applicant. Nonetheless, USCIS would keep the applicant's $85 payment.

14.    USCIS sends Biometric Notices to applicants to inform them that it will not re-collect their biometrics. In these Notices, USCIS also states that their $85 biometric fee will not be refunded. Below is an excerpt of the Biometric Notice Plaintiff Tang received *hours* after submitting his online application for naturalization[16]:

| Notice to Applicants | | CASE TYPE<br>N400 - APPLICATION FOR NATURALIZATION | | NOTICE DATE<br>12/19/2021 |
|---|---|---|---|---|
| APPLICATION/PETITION/REQUEST NUMBER | | | USCIS A#<br> | CODE<br>N/A |
| ACCOUNT NUMBER | | TCR<br> | SERVICE CENTER<br>NBC | PAGE<br>1 of 1 |

TONY TANG
c/o TONY TANG

U.S. Citizenship and Immigration Services (USCIS) has received your form and is currently processing your application, petition, or request. This notice informs you that USCIS is able to reuse your previously captured fingerprints and other biometrics. USCIS will run the same security checks and use your biometric data as in the past; however, **it is not necessary for you to appear at a USCIS Application Support Center (ASC) for a biometrics appointment.** The biometrics fee will not be refunded.

*Figure 1.*

15.    In addition to informing applicants that they will not receive any new ASC-related services, the Biometric Notices invariably claim that "USCIS will run the same security checks and use your biometric data as in the past." But, as explained above, USCIS often does not run a new FBI fingerprint background check or a new FBI name check if the applicant's prior, successful checks occurred within the past 15 months and thus remain valid under standard USCIS policy.

---

[16] Plaintiff Tang's Biometric Notice was redacted to obscure sensitive personal information like his home address and his USCIS personal, account, and application numbers.

16.    This understanding of USCIS' biometric reuse policy is borne out by Plaintiffs' own experiences. Both paid multiple $85 biometric fees. Both received at least one Biometric Notice, and USCIS did not re-collect their biometrics or provide new ASC-related services:

a.    On April 4, 2022, Plaintiff Torres applied to renew his green card. He received a Biometric Notice that same day. Nine days later, on April 13, he applied for naturalization. He received a second Biometric Notice that same day.

b.    Plaintiff Tang applied for naturalization on December 19, 2021, and received a Biometric Notice that same day.

17.    USCIS likely also failed to order new background checks in connection with Plaintiff Torres's applications. Plaintiff Torres submitted applications for naturalization within 15 months of a prior application for which he also paid a biometric fee, and under USCIS policy, at most one background check would have been conducted, even though Plaintiff Torres paid two biometric fees. In Plaintiff Torres's case, this is confirmed by the speed of USCIS's approval of his application. Plaintiff Torres's application took 6 months: he submitted on April 13, 2022, was scheduled for an interview on July 11, and received his naturalization certificate on October 18. In fiscal year 2022, USCIS's *median* processing time for N-400 applications was 10.5 months,[17] corresponding to 1,075,700 applications.[18] It is highly unlikely that Plaintiff Torres's application could have worked its way through the queue in only 6 months if USCIS ordered a new FBI

---

[17]    USCIS, *Historical National Median Processing Time* (last visited Nov. 4, 2023), available at https://egov.uscis.gov/processing-times/historic-pt. In other words, 50% of applications took *longer* than 10.5 months.
[18]    USCIS, *Fiscal Year 2020 Progress Report* at 3 (Dec. 2022), available at https://www.uscis.gov/sites/default/files/document/reports/OPA_ProgressReport.pdf.

background check.[19] In fact, per USCIS's policy, the first step in the process—the naturalization

interview—cannot even be scheduled until *after* the background check is completed.[20]

18.     The same quicker-than-usual approval occurred in Plaintiff Tang's case. His

application took 5 months: he submitted on December 19, 2021, was scheduled for an interview

exactly 3 months later, on March 19, 2022, and received his naturalization certificate on May 25,

2022. It is therefore likely that USCIS also did not order a new background check for Plaintiff

Tang.

**2. USCIS set the biometric fee to recover the costs of performing biometric services, and only the costs of performing biometric services.**

19.     By statute, USCIS is authorized to set fees for services at a level that recovers the

agency's full costs of providing the immigration services:

> (m) . . . Provided further, that fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants. Such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected.

8 U.S.C. § 1356(m).

20.     As mandated by the Chief Financial Officer Act ("CFO Act"), the agency

recognizes that it "is required by law to review its fees at least once every two years."[21] All the

collected fees are deposited into the Immigration Examinations Fee Account ("IEFA"). USCIS

---

[19] These background checks typically take 1 to 2 months from the time USCIS submits the biometric information to the FBI. *See, e.g.*, Hacking Immigration Law, *USCIS Background Check Delay: How Long Will It Take?* ("Once you do and get fingerprinted, background checks usually take six to eight weeks, maybe 12 weeks.") (last visited Oct. 5, 2023), https://hackinglawpractice.com/how-will-i-know-security-checks-are-done/#:~:text=Once%20you%20do%20and%20get,can%20be%20frustrating%20for%20people; Abogada Ashley Immigration, *What Happens During the USCIS Background Check?* ("Processing a background check for the USCIS can take several weeks to months.") (last visited Oct. 5, 2023), https://abogadaashley.com/uscis-background-check/.
[20] 8 C.F.R. § 335.2(b) ("USCIS will notify applicants for naturalization to appear before a USCIS officer for initial examination on the naturalization application *only after* the USCIS has received a definitive response from the Federal Bureau of Investigation that a *full criminal background check of an applicant has been completed*.") (emphasis added).
[21] *Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule*, 72 Fed. Reg. 29851, 29856 (May 30, 2007).

expressly represents that the fees are "not intended to recover the losses currently being sustained by USCIS."[22] In other words, "[t]he fees are designed to recover the costs of operations in the future and are not retroactive."[23]

21.     As relevant here, USCIS exercised its authority to set biometric services fees under § 1356(m) in three Administrative Procedure Act ("APA") rulemakings:

    a.  The 2007 rule set the biometric fee at $80.

    b.  The 2010 rule raised the biometric fee to $85.

    c.  The 2016 rule kept the biometric fee at $85 while changing the language of the regulation to list the services USCIS must provide to the applicant.

        i.  This rule governs as of the filing of this complaint because the subsequent rules either are enjoined or are pending.[24]

22.     USCIS reviews and sets these fees following a three-step process.

23.     ***Step One***. At this step, USCIS establishes "a model for assigning costs to specific benefit requests."[25] To achieve this goal "USCIS uses commercially available [activity-based costing] ABC software to create financial models to calculate the costs for processing immigration benefit requests, including the costs for biometric services."[26] The aim at this step is to set the fee to ensure that the full costs of the services USCIS provides the applicant are recovered. The full costs include "[d]irect and indirect personnel costs," "[p]hysical overhead, consulting, and other indirect costs," "[m]anagement and supervisory costs," and "[t]he costs of enforcement, collection, research, establishment of standards, and regulation."[27] The ABC methodology involves three stages.

---

[22] 72 Fed. Reg. at 29870.
[23] *Id.*
[24] In 2020, USCIS passed a rule eliminating the separate biometric fee. After that rule was enjoined by two district courts, USCIS abandoned it. That rule is not in effect today. The 2016 rule is. *See supra*, n.1.
[25] 81 Fed. Reg. 26904 at 26907.
[26] *Id.* at 26913.
[27] *Id.* at 26906.

24.  <u>#1 Resources Determination Stage</u>. At this stage, USCIS determines how much money in total it will require to operate in the next two years (the review period mandated by the CFO Act). The costs are determined based on USCIS's previous budget, on the inflation rate, and on any changes that might affect the costs. In addition, "[w]orkload volumes are a key element used when determining the USCIS resources needed."[28] For the 2016 and 2017 years, USCIS determined that it will require $3 billion in yearly resources.[29]

| FY 2016/2017 Fee Review IEFA Cost Baseline (Dollars in Thousands) | |
|---|---|
| Total FY 2015 Adjusted IEFA Budget | $2,863,889 |
| Plus:  Pay Inflation and Promotions/Within Grade Increases | 130,092 |
| Plus:  Net Additional Costs | 137,381 |
| Less:  Spending Adjustments | -122,338 |
| Total **FY 2016** Adjusted IEFA Budget | **$3,009,024** |
| Plus:  Pay Inflation and Promotions/Within Grade Increases | 38,072 |
| Plus:  Net Additional Costs | 19,452 |
| Total **FY 2017** Adjusted IEFA Budget | **$3,066,548** |

*Figure 2.*

25.  <u>#2 Resource to Activity Assignment Stage</u>. Next, USCIS determines the activities it performs and assigns resource costs to those activities. "Activities represent work performed by an organization."[30] USCIS divides its work into eleven activities: (1) Perform Biometric Services, (2) Inform the Public, (3) Intake, (4) Conduct TECS Check, (5) Records Management, (6) Make Determination, (7) Fraud Detection and Prevention, (8) Issue Document, (9) Management and Oversight, (10) Direct Costs, and (11) Systematic Alien Verification and Entitlements.[31] Once the activities are defined, "[a]ll resource costs are assigned to activities, so the total resources in the model equal the total cost of activities."[32] "For example, the contract awarded to support USCIS

---

[28] *Id.* at 26923.
[29] USCIS, *FY 2016/2017 Immigration Examinations Fee Account Fee Review Supporting Documentation with Addendum* at 14 (Oct. 2016) (hereinafter "2016 IEFA Review"), available at https://www.regulations.gov/document/USCIS-2016-0001-0466.
[30] 81 Fed. Reg. 26904 at 26913.
[31] *Id.*
[32] *Id.*

Application Support Center operations only pertains to the 'Perform Biometric Services' activity. Therefore, the costs of this contract are assigned directly to this activity."[33] In the 2016 rule, USCIS assigned the Perform Biometric Services activity $194.67 million in costs for 2016 and $197.84 million for 2017. The average cost for the two years was $196.25 million.[34]

TABLE 7—PROJECTED IEFA COSTS BY ACTIVITY
[Dollars in thousands]

| Activity | FY 2016 | FY 2017 | FY 2016/2017 average |
|---|---|---|---|
| Perform Biometrics Services | $194,670 | $197,837 | $196,254 |
| Make Determination | 1,268,309 | 1,302,756 | 1,285,533 |
| Management and Oversight | 588,262 | 592,151 | 590,206 |
| Inform the Public | 281,668 | 288,187 | 284,927 |
| Records Management | 238,271 | 240,777 | 239,524 |
| Fraud Detection and Prevention | 176,530 | 180,544 | 178,537 |
| Intake | 94,736 | 93,120 | 93,928 |
| Direct Costs | 56,444 | 58,476 | 57,460 |
| Conduct TECS Check | 52,829 | 53,994 | 53,412 |
| Issue Document | 31,975 | 32,632 | 32,304 |
| Systematic Alien Verification for Entitlements | 25,330 | 26,074 | 25,702 |
| Total IEFA Costs | 3,009,024 | 3,066,548 | 3,037,786 |

*Figure 3.*

26.    <u>#3 Activity to Fee Assignment Stage</u>. At this last stage, USCIS divides the activities between different fees it charges. When it comes to the biometric fee, things are simple: all the Perform Biometric Services activity costs "are assigned directly to the biometric services fee."[35] In addition, only the costs of that activity influence the biometric fee. Although USCIS explains that "a small amount of direct costs" are assigned to the biometric fee,[36] direct costs account for $0 of the $85 biometric fee.[37]

---

[33] *Id.*
[34] *Id.* at 26926.
[35] *Id.* at 26914.
[36] *Id.*
[37] 2016 IEFA Review at 55.

| Activity Unit Costs by Immigration Benefit Request ($ dollars) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Immigration Benefit Request | Perform Biometrics Services | Inform the Public | Intake | Management and Oversight | Conduct TECS Check | Records Management | Fraud Detection and Prevention | Make Determination | Issue Document | Direct Costs |
| Biometric Services | 85 | - | - | - | - | - | - | - | - | 0 |
| G-1041 Genealogy Index Search Request | - | - | 16 | - | - | 27 | - | - | - | 21 |
| G-1041A Genealogy Records Request | - | - | 16 | - | - | 27 | - | - | - | 21 |
| I-90 Application to Replace Permanent Resident Card | - | 39 | 22 | 130 | 18 | 108 | 48 | 63 | 17 | 10 |
| I-102 Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | - | 47 | 31 | 118 | 15 | 56 | 44 | 129 | - | 4 |
| I-129 Petition for a Nonimmigrant worker | - | 42 | 13 | 110 | 10 | 47 | 42 | 192 | - | 4 |
| I-129F Petition for Alien Fiance(e) | - | 42 | 32 | 126 | 19 | 56 | 47 | 207 | - | 6 |
| I-130 Petition for Alien Relative | - | 64 | 27 | 120 | 11 | 45 | 42 | 222 | - | 6 |
| I-131/I-131A Application for Travel Document | - | 49 | 39 | 159 | 20 | 81 | 54 | 117 | 20 | 36 |
| I-140 Immigrant Petition for Alien Worker | - | 32 | 29 | 110 | 18 | 47 | 40 | 417 | - | 6 |
| I-290B Notice of Appeal or Motion | - | 19 | 20 | 48 | 9 | 14 | 32 | 532 | - | 1 |
| I-360 Petition for Amerasian Widow(er) or Special Immigrant | - | 35 | 14 | 66 | 7 | 32 | 23 | 254 | - | 4 |
| I-485 Application to Register Permanent Residence or Adjust Status | - | 125 | 31 | 152 | 18 | 53 | 53 | 674 | 18 | 18 |
| I-526 Immigrant Petition by Alien Entrepreneur | - | 25 | 29 | 370 | - | 45 | 476 | 2.725 | - | 4 |
| I-539 Application to Extend/Change Nonimmigrant Status | - | 42 | 29 | 109 | 10 | 47 | 40 | 90 | - | 4 |

*Figure 4.*

27.     Thus, at Step One of USCIS's fee-setting process, the Perform Biometrics Services activity and the biometric fee are equivalent. Put differently, the biometric fee is "set at a level that will ensure recovery of the full costs of providing" the Perform Biometrics Services activity. 8 U.S.C. § 1356(m). And nothing else.

28.     That was also the case in the 2010 rule.[38] The table below shows that the "Capture Biometrics"[39] activity's costs were assigned to the biometric fee only. It further shows that the *only* costs assigned to the biometric fee were the costs of the "Capture Biometrics" activity.

---

[38] USCIS, *FY 2010/2011 Immigration and Examinations Fee Account Fee Review* at 65 (June 2010) (hereinafter "2010 IEFA Review"), available at https://www.regulations.gov/document/USCIS-2009-0033-0007.

[39] In 2010, the Perform Biometric Services activity was known as the Capture Biometrics activity. 88 Fed. Reg. 402 at 484 n.218.

14

| Immigration Benefit | Management and Oversight | Inform the Public | Intake | Capture Biometrics | Conduct IBIS Check | Review Records | Fraud Detection and Prevention | Make Determination | Issue Document |
|---|---|---|---|---|---|---|---|---|---|
| I-90 | 71 | 50 | 26 | 0 | 16 | 83 | 25 | 73 | 20 |
| I-102 | 68 | 32 | 26 | 0 | 13 | 43 | 24 | 123 | 0 |
| I-129 | 67 | 28 | 26 | 0 | 11 | 36 | 24 | 132 | 0 |
| I-129F | 90 | 34 | 26 | 0 | 10 | 45 | 33 | 102 | 0 |
| I-130 | 69 | 43 | 26 | 0 | 17 | 42 | 24 | 199 | 0 |
| I-131 | 90 | 41 | 26 | 0 | 15 | 63 | 32 | 67 | 26 |
| I-140 | 67 | 30 | 26 | 0 | 13 | 38 | 24 | 382 | 0 |
| I-290B | 34 | 21 | 26 | 0 | 32 | 23 | 10 | 483 | 0 |
| I-360 | 26 | 13 | 26 | 0 | 6 | 15 | 9 | 310 | 0 |
| I-485 | 76 | 64 | 26 | 0 | 24 | 58 | 26 | 689 | 21 |
| I-526 | 70 | 30 | 26 | 0 | 10 | 34 | 25 | 1304 | 0 |
| I-539 | 67 | 26 | 26 | 0 | 11 | 39 | 24 | 97 | 0 |
| I-600/600A, I-800/800A | 52 | 48 | 26 | 0 | 29 | 41 | 17 | 507 | 0 |
| I-687 | 77 | 67 | 26 | 0 | 24 | 75 | 27 | 833 | 0 |
| I-690 | 11 | 7 | 26 | 0 | 2 | 13 | 4 | 136 | 0 |
| I-694 | 68 | 36 | 26 | 0 | 11 | 73 | 24 | 516 | 0 |
| I-698 | 81 | 75 | 26 | 0 | 27 | 78 | 28 | 682 | 23 |
| I-751 | 70 | 37 | 26 | 0 | 15 | 42 | 25 | 269 | 20 |
| I-765 | 94 | 42 | 26 | 0 | 16 | 75 | 34 | 65 | 27 |
| I-817 | 67 | 30 | 26 | 0 | 12 | 42 | 24 | 214 | 19 |
| I-824 | 68 | 34 | 26 | 0 | 14 | 43 | 24 | 196 | 0 |
| I-829 | 116 | 51 | 26 | 0 | 22 | 65 | 42 | 3395 | 33 |
| Civil Surgeon Registration | 69 | 85 | 26 | 0 | 0 | 61 | 24 | 349 | 0 |
| I-924 | 65 | 24 | 26 | 0 | 0 | 28 | 24 | 6062 | 0 |
| N-300 | 19 | 21 | 26 | 0 | 8 | 17 | 6 | 153 | 0 |
| N-336 | 58 | 65 | 26 | 0 | 24 | 51 | 19 | 407 | 0 |
| N-400 | 67 | 75 | 26 | 0 | 28 | 58 | 21 | 320 | 0 |
| N-470 | 27 | 31 | 26 | 0 | 11 | 24 | 9 | 202 | 0 |
| N-565 | 84 | 37 | 26 | 0 | 13 | 42 | 29 | 114 | 0 |
| N-600/600K | 75 | 84 | 26 | 0 | 31 | 65 | 24 | 295 | 0 |
| Waiver Forms | 39 | 16 | 26 | 0 | 32 | 15 | 10 | 447 | 0 |
| Immigrant Visa | 66 | 27 | 26 | 0 | 0 | 28 | 0 | 0 | 18 |
| Biometric Services | - | - | - | 86 | - | - | - | - | - |

*Activity Unit Costs by Immigration Benefit*

*Figure 5.*

29.     Similarly, in 2007, USCIS depicted its cost assignment in the below figure, which shows that the biometric fee is set to cover the Capture Biometrics activity and only that activity.[40]

---

[40] USCIS, *Adjustment of the Immigration Benefit Application/Petition Fee Schedule* at 54 (Feb. 2007) (hereinafter "2007 IEFA Review"), available at https://www.regulations.gov/document/USCIS-2006-0044-0208.

**Figure 5**



*Figure 6.*

30.    **_Step Two_**. At this step, USCIS "distribute[s] costs that are not attributed to or driven by specific adjudication and naturalization services."[41] To understand this Step and how it differs from Step One, it is important to note that USCIS offers two types of services: (1) paid services (*e.g.*, naturalization and green card applications) and (2) unpaid services (*e.g.*, refugee and asylum applications). An applicant can avoid paying for paid services by obtaining a fee waiver. At Step One, USCIS allocates the costs associated with _paid_ services—including the costs associated with applicants with waivers. In contrast, at Step Two, USCIS allocates the costs generated by the _unpaid_ services.[42] According to USCIS, "Asylum/Refugee and fee/exempt costs are referred to as 'surcharges' since they are not directly related to the processing activity costs of a particular immigration benefit."[43] In USCIS's accounting nomenclature, these costs "are reallocated" using

---

[41] 81 Fed. Reg. 26904 at 26907.

[42] *Id.* at n.17 ("The costs associated with processing the refugee and asylum workload are reallocated outside the [Step One ABC] model to other fee-paying immigration benefit requests.").

[43] *Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule*, 72 Fed. Reg. 4888, 4902 (Feb. 1, 2007).

the "Cost Reallocation" entry in USCIS's proposed fees table.[44] Crucially, "*[s]urcharges are not assigned to the biometric fee*."[45] In other words, USCIS *does not* re-allocate any costs associated with unpaid services to the biometric fee. Therefore, Step Two does not impact the biometric fee.

31.    ***Step Three***. Finally, at this last step, USCIS adjusts the fees "to effectuate specific policy objectives."[46] If USCIS concludes that after Steps One and Two that certain fees are too high, it may reallocate some of the costs for those fees to different fees. For example, in 2016, USCIS exempted "applicants . . . [in] military service" from paying the N-400 naturalization fee.[47] It also allowed "applicants with household incomes greater than 150 percent and not more than 200 percent of the Federal Poverty Guidelines to pay a fee of $320 plus an additional $85 for biometrics, for a total of $405," instead of the regular $725 total fee.[48] These policies "ensure[d] that those immigrants whose goal it is to apply for naturalization are not unnecessarily limited by their economic means" and that even though "other fee payers would be required to bear the cost of the reduced fee, [USCIS] believes the importance of naturalization justifies this slight shift of burden." These additional costs are also reallocated using the "Cost Reallocation" entry.[49]

32.    Importantly, in 2016, the "Cost Reallocation" entry—which encapsulates the additional costs USCIS calculates at both Step Two and Step Three—for the biometric fee was "$0."[50]

---

[44] 2016 IEFA Review at 53 n.50 ("Cost Reallocation proportionally assigns costs incurred from services from which USCIS does not receive revenue . . . .").
[45] 72 Fed. Reg. 4888 at 4909 (emphasis added).
[46] 81 Fed. Reg. 26904 at 26907.
[47] *Id.* at 26916.
[48] *Id.* (footnote omitted).
[49] 2016 IEFA Review at 53 n.50 ("Cost Reallocation proportionally assigns costs incurred . . . from forms that are held to the 8% weighted average increase based on policy decisions (e.g. N-400 fee) to other fee-paying forms.").
[50] *Id.* at 54.

| Final Fees by Immigration Benefit Request | | | | | | |
|---|---|---|---|---|---|---|
| **Immigration Benefit Request** | **Current Fees** | **Model Output[49]** | **Cost Reallocation[50]** | **Final Fees[51]** | **Change in Fees** | **Percent Change in Fees** |
| N-470 Application to Preserve Residence for Naturalization Purposes | $330 | $792 | ($438) | $355 | $25 | 8% |
| N-565 Application for Replacement Naturalization/Citizenship Document | $345 | $399 | $157 | $555 | $210 | 61% |
| N-600/N-600K Application for Certificate of Citizenship | $600 | $841 | $330 | $1,170 | $570 | 95% |
| Waiver Forms (I-191, I-192, I-193, I-212, I-601, I-612) | $585 | $667 | $262 | $930[53] | $345 | 59% |
| USCIS Immigrant Fee (formerly called the "Immigrant Visa DHS Domestic Processing Fee") | $165 | $157 | $61 | $220 | $55 | 33% |
| Biometric Services | $85 | $75 | $0 | $85[54] | $0 | 0% |

*Figure 7.*

33.     Instead, all the costs were reallocated to the other fees. Thus, Steps Two and Three do not influence the biometric fee and the only costs USCIS seeks to recover when setting that fee are the costs of the Perform Biometrics Services activity, calculated at Step One.

34.     During the three-step process USCIS performs when setting the fees pursuant to § 1356(m), USCIS accordingly derives two sub-costs for each fee. The agency derives the first sub-cost at Step One as a result of the ABC Model. USCIS derives the second sub-cost by adding the reallocated costs obtained at Steps Two and Three. USCIS then divides these two sub-costs by the number of applicants it expects to pay the particular fee, which excludes applicants that obtain a fee waiver. The two per-applicant sub-costs are then added and rounded up or down to the closest factor of $5. These per-applicant sub-costs are reflected in the "Model Output" (Step One) and in the "Cost Reallocation" (Steps Two and Three) entries in USCIS's proposed fees table.

35.     In 2016, USCIS divided the $196,254,000 cost it assigned to the Perform Biometrics Services activity by the 2,598,639 number of applicants it expected to pay the biometric fee in 2016/2017. The result of that division was $75.52. Hence the "Model Output" entry is "$75."

36.     In 2016, "Cost Reallocation" for biometrics was $0 because USCIS did not assign surcharges (Step Two) or policy costs (Step Three) to that fee. Instead, the agency reallocated these costs to other fees. Because the reallocated costs were $0, the reallocated portion of the fee was also $0.

11915636v1/017867

**3. The $85 fee is much higher than the level that recovers the cost of the correlated services.**

37.     When USCIS performed its biennial mandatory review in 2016, even though its process revealed that a fee of $75 would be sufficient to recover its costs associated with biometric services, USCIS inexplicably left the fee at $85.[51]

38.     Since USCIS accounts for all its costs during the three steps described above, by setting the biometric fee at $85 instead of $75, USCIS generated a revenue. By generating a revenue, USCIS violated both the plain text of § 1356(m) and the agency's own interpretation of that statute. Time and again, USCIS has explained that "[f]iling fees are not designed to . . . generate general revenue."[52] For example, in 2007, during a congressional hearing, when Representative King asked USCIS's then-CFO Rendell Jones whether USCIS's fees "equal[] your costs," Mr. Jones answered "Yes."[53] By setting the biometric fee at $85, USCIS violated its promises to the public and to Congress. In fact, this fee likely allows USCIS to generate for itself a yearly profit to the tune of $30 million.

39.     The way USCIS set the currently operative biometric fee in 2016 even contradicts its usual practices. In 2016, USCIS set *every single other fee* by adding the "Model Output" and "Cost Reallocation" numbers and rounding the result down or up.[54]

---

[51] 81 Fed. Reg. 26904 at 26917 (citing only "uncertainty" to explain why USCIS kept the biometric services fee at $85 even though its "model calculated a biometric services fee of $75").

[52] 72 Fed. Reg. 29851 at 29856; *see also U.S. Citizenship and Immigration Services Fee Schedule*, 75 Fed. Reg. 58962, 58970 (Sept. 24, 2010); *U.S. Citizenship and Immigration Services Fee Schedule*, 81 Fed. Reg. 73292, 73312 n. 69 (Oct. 24, 2016).

[53] USCIS, *Congressional Hearing on Immigration Fees and Increase* at 11 (Feb. 14, 2007), available at https://www.regulations.gov/document/USCIS-2006-0044-1950.

[54] 2016 IEFA Review at 53-54. The only exception was I-829 Petition by Entrepreneur to Remove Conditions fee. USCIS charges that fee very rarely (only 3,562 times a year compared to 3,028,254 times for the biometric fee) and USCIS deviated from its practice for the I-829 "because the final parameters of the program are still evolving." 2016 IEFA Review at 24-25.

| Immigration Benefit Request | Current Fees | Model Output[49] | Cost Reallocation[50] | Final Fees[51] | Change in Fees | Percent Change in Fees |
|---|---|---|---|---|---|---|
| **Final Fees by Immigration Benefit Request** | | | | | | |
| G-1041 Genealogy Index Search Request | $20 | $46 | $18 | $65 | $45 | 225% |
| G-1041A Genealogy Records Request | $20 | $46 | $18 | $65 | $45 | 225% |
| I-90 Application to Replace Permanent Resident Card | $365 | $326 | $128 | $455 | $90 | 25% |
| I-102 Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | $330 | $321 | $126 | $445 | $115 | 35% |
| I-129 Petition for a Nonimmigrant worker | $325 | $330 | $130 | $460 | $135 | 42% |
| I-129F Petition for Alien Fiancé(e) | $340 | $385 | $151 | $535 | $195 | 57% |
| I-130 Petition for Alien Relative | $420 | $383 | $150 | $535 | $115 | 27% |
| I-131-I-131A Application for Travel Document | $360 | $412 | $162 | $575 | $215 | 60% |
| I-140 Immigrant Petition for Alien Worker | $580 | $503 | $197 | $700 | $120 | 21% |
| I-290B Notice of Appeal or Motion | $630 | $1,997 | ($1,321) | $675 | $45 | 7% |
| I-360 Petition for Amerasian Widow(er) or Special Immigrant | $405 | $1,653 | ($1,218) | $435 | $30 | 7% |
| I-485 Application to Register Permanence Residence or Adjust Status | $985 | $818 | $321 | $1,140 | $155 | 16% |
| I-526 Immigrant Petition by Alien Entrepreneur | $1,500 | $2,639 | $1,036 | $3,675 | $2,175 | 145% |
| I-539 Application to Extend/Change Nonimmigrant Status | $290 | $267 | $105 | $370 | $80 | 28% |
| I-600/600A/800/800A Adoption Petitions and Applications | $720 | $2,258 | ($1,485) | $775 | $55 | 8% |
| I-601A Provisional Unlawful Presence Waiver | $585 | $775 | ($147) | $630 | $45 | 8% |
| I-687 Application for Status as a Temporary Resident | $1,130 | $0 | $1,130 | $1,130 | $0 | 0% |
| I-690 Application for Waiver of Grounds of Inadmissibility | $200 | $514 | $202 | $715 | $515 | 258% |
| I-694 Notice of Appeal of Decision | $755 | $640 | $251 | $890 | $135 | 18% |
| I-698 Application to Adjust Status From Temporary to Permanent Resident (Under Section 245A of Public Law 99-603) | $1,020 | $1,201 | $471 | $1,670 | $650 | 64% |
| I-751 Petition to Remove Conditions on Residence | $505 | $426 | $167 | $595 | $90 | 18% |
| I-765 Application for Employment Authorization | $380 | $507 | ($99) | $410 | $30 | 8% |
| I-800A Supplement 3 Request for Action on Approved Form I-800A | $360 | $937 | ($551) | $385 | $25 | 7% |
| I-817 Application for Family Unity Benefits | $435 | $431 | $169 | $600 | $165 | 38% |
| I-824 Application for Action on an Approved Application or Petition | $405 | $334 | $131 | $465 | $60 | 15% |
| I-829 Petition by Entrepreneur to Remove Conditions | $3,750 | $2,353 | $0 | $3,750[52] | $0 | 0% |
| I-910 Application for Civil Surgeon Designation | $615 | $564 | $221 | $785 | $170 | 28% |
| I-924 Application for Regional Center Designation Under the Immigrant Investor Program | $6,230 | $12,781 | $5,016 | $17,795 | $11,565 | 186% |
| I-924A Annual Certification of Regional Center | N/A | $2,179 | $855 | $3,035 | $3,035 | N/A |
| I-929 Petition for Qualifying Family Member of a U-1 Nonimmigrant | $215 | $820 | ($589) | $230 | $15 | 7% |
| N-300 Application to File Declaration of Intention | $250 | $840 | ($571) | $270 | $20 | 8% |
| N-336 Request for Hearing on a Decision in Naturalization Proceedings | $650 | $1,294 | ($596) | $700 | $50 | 8% |
| N-400 Application for Naturalization | $595 | $871 | ($232) | $640 | $45 | 8% |
| N-470 Application to Preserve Residence for Naturalization Purposes | $330 | $792 | ($438) | $355 | $25 | 8% |
| N-565 Application for Replacement Naturalization/Citizenship Document | $345 | $399 | $157 | $555 | $210 | 61% |
| N-600/N-600K Application for Certificate of Citizenship | $600 | $841 | $330 | $1,170 | $570 | 95% |
| Waiver Forms (I-191, I-192, I-193, I-212, I-601, I-612) | $585 | $667 | $262 | $930[53] | $345 | 59% |
| USCIS Immigrant Fee (formerly called the "Immigrant Visa DHS Domestic Processing Fee") | $165 | $157 | $61 | $220 | $55 | 33% |
| Biometric Services | $85 | $75 | $0 | $85[54] | $0 | 0% |

*Figure 8.*

40.     And the same is true for *every single other fee* USCIS set in 2007[55] and in 2010.[56]

41.     As explained above, in both the 2007 and the 2010 rules (just as in 2016), the biometric fee was set to recover only the costs of the Perform Biometric Services activity (then known as the Capture Biometrics activity). In 2007, USCIS allocated to that activity $174,000,000 in costs, and then set the fee at $80 by dividing that cost by the 2,195,812 applicants it expected to

---

[55] 2007 IEFA Review at 143.

[56] 2010 IEFA Review at 66. The one exception was the I-907 premium processing fee that USCIS adjusted based on the Consumer Price Index as mandated by 8 U.S.C. §1356(u)(3)(C).

pay the fee to arrive at an $80 fee (the result was $79.24).[57] Similarly, in 2010, USCIS set the fee at $85 by dividing the $167,484,000 total cost for the Capture Biometrics activity by 1,950,603 fee-paying applicants to arrive at an $85 fee (the result was $85.86).[58]

42.    In 2016, this same process resulted in a $75 biometric services cost per applicant. Yet USCIS left the biometric fee at $85.

43.    But even the $75 per-applicant cost calculated by USCIS in 2016 was inflated because it costs USCIS much less than that to perform biometric services, when accounting for the millions of times that USCIS does not re-collect biometrics and does not pay for new FBI background checks. In 2007, the costs of collecting biometrics and running background checks corresponded to 49.7% and 36.2%, respectively, of the total cost for performing biometric services.[59] Assuming those proportions continue to apply, this means that when USCIS charges the full $85 biometric fee but does not collect biometrics, it pockets about half of the $85 fee as profit. And when USCIS charges the full $85 biometric fee but neither collects biometrics nor runs new background checks, it pockets almost 90% of the fee as profit. As explained above, USCIS likely reuses around *1.9 million* biometrics per year and some number of FBI background checks. Each of those 1.9 million reuses likely yielded USCIS a profit of at least 50% of the $85 fee, and many of them likely yielded an even higher profit of almost 90%.

44.    That USCIS did not consider reuses when setting the biometric fee is evident from its own statements from the rulemaking process. In its 2007 rulemaking that resulted in a per-applicant fee of $80, USCIS confirmed that this calculation assumed a new biometrics collection

---

[57] 2007 IEFA Review at 50, 136.
[58] 2010 IEFA Review at 60, 73.
[59] 72 Fed. Reg. 4888 at 4906 (explaining that the budget for ASCs is $74 million plus $12.5 million (constituting 49.7% of the $174 million Capture Biometrics budget) and that the budget for FBI checks is $63 million (constituting 36.2%)).

11915636v1/017867

*every single time* the applicant paid the fee. In fact, USCIS justified its plan to repeatedly re-collect biometrics as permitting it to "verify the identity of the applicant by comparing the newly collected biometrics with those previously submitted, providing an important security enhancement."[60] In 2010, USCIS again extolled this supposed benefit of collecting biometrics *every single time* an applicant paid the biometric fee: "When an applicant later reapplies to renew a benefit or for another benefit, the biometrics appointment is not simply an opportunity to re-take the biometrics again; it is an opportunity to use biometrics to verify his or her identity."[61] But even though USCIS, when setting the biometric fee, assumes that it will incur the full costs of performing biometrics *every single time* it charges the fee, that is not what happens in practice.

45.     Moreover, in 2010, USCIS claimed that, as it implements technical improvements to its internal systems, it would soon be able to reuse biometrics, promising that "[f]uture fee rules will take into account" these reuses.[62] But USCIS never did take reuse into account. Its promise remains unfulfilled to this day.

46.     That USCIS did not take into account reuses is also clear from the way it estimated its workload. For example, in 2007, as USCIS's cost analysis tables indicate (reproduced below), USCIS's estimates of how many additional FBI background checks it would have to pay for in the following years *equaled* the number of additional applications it expected to receive in the following years.[63] In other words, USCIS's cost projections assumed that USCIS would run new

---

[60] 72 Fed. Reg. 29851 at 29857. Although USCIS did mention reuse in the 2007 rule, it only intended to reuse the biometrics when "an application or petition has not been adjudicated within the fifteen month validity period" of the FBI background check. *Id.* In other words, the reuse that USCIS contemplated was reusing biometrics for the *same* application for which they were initially collected not for a *different* application. The type of reuse USCIS contemplated in 2007 is not at issue in this case because USCIS does not charge the biometric fee more than once per application.

[61] 75 Fed. Reg. 58962 at 58976.

[62] *Id.*

[63] *Compare* 2007 IEFA Review at 115 (Table x, column "Volume Change"), *with* 72 Fed. Reg. at 4904 (Table 6, column "Difference").

background checks for each application that required a biometric fee.[64] USCIS's biometric fee calculation did not contemplate reuse of background checks.[65]

**x) FBI Background Checks - $12,398,000**

Increased FBI costs are based on the actual FY 2006 costs, plus increases in the FBI Costs ($7M), which includes a $2 increase in the fingerprint fee from $16 to $18, or $2, and an increase in the name check cost from $3.65 to $9, or $5 ($8M), less the projected change in volume ($2.6M).

| Actual Number of FBI Name Checks ('06) | 1,504,000 | |
| Additional Unit Costs | $5 | |
| Total Add'l Name Check Costs | $8,046,400 | |

| Volume Change | Unit Costs | Form | |
|---|---|---|---|
| 304,086 | $16 | I-821 | (4,865,376) |
| 22,509 | $21 | I-881 | (472,689) |
| 4,074 | $27 | N-400 | 109,998 |
| 6,975 | $27 | I-485 | 188,325 |
| 143,000 | $18 | I-751 | 2,574,000 |
| (130,124) | $16 | I-90 | (2,081,984) |
| 139,000 | $18 | I-131 | 2,502,000 |
| 101 | $18 | I-600 | 1,818 |
| (37,778) | $16 | I-687 | (604,448) |
| | Fingerprint and Name Check Costs due to volume changes | | ($2,648,356) |
| | | | |
| | Actual Number of FBI Fingerprint Checks ('06) | | 3,500,000 |
| | Additional Unit Costs | | $2 |
| | Total Additional Fingerprint Costs | | $7,000,000 |
| | Total Additional FBI Costs | | $12,398,044 |

TABLE 6.—WORKLOAD VOLUMES BY APPLICATION/PETITION

| Form No. | FY 2006 actual workload volume | FY 2008/2009 projected workload volume | Difference |
|---|---|---|---|
| I-90 | 682,149 | 552,025 | (130,124) |
| I-102 | 24,139 | 24,035 | (104) |
| I-129 | 417,955 | 400,000 | (17,955) |
| I-129F | 66,177 | 66,177 | |
| I-130 | 747,012 | 743,823 | (3,189) |
| I-131 | 371,880 | 339,000 | (32,880) |
| I-140 | 140,158 | 135,000 | (5,158) |
| Waiver Applications | 45,459 | 45,459 | |
| Form I-290B/Motions | 47,645 | 47,645 | |
| I-360 | 16,086 | 16,000 | (86) |
| I-485 | 606,425 | 613,400 | 6,975 |
| I-526 | 600 | 600 | |
| I-539 | 233,531 | 220,000 | (13,531) |
| I-600/600A | 29,500 | 29,601 | 101 |
| I-687 | 38,278 | 500 | (37,778) |
| I-690 | 3,293 | 3,293 | |
| I-694 | 3,696 | 3,696 | |
| I-695 | 29 | 56 | 27 |
| I-698 | 831 | 494 | (337) |
| I-751 | 143,360 | 143,000 | (360) |
| I-765 | 1,462,583 | 1,300,000 | (162,583) |
| I-817 | 5,762 | 5,762 | |
| I-824 | 40,105 | 40,785 | 680 |
| I-829 | 88 | 88 | |
| I-881 | 22,509 | | (22,509) |
| I-905 | 2 | 10 | 8 |
| I-914 | 403 | 400 | (3) |
| N-300 | 91 | 100 | 9 |
| N-336 | 13,692 | 14,000 | 308 |
| N-400 | 730,642 | 734,716 | 4,074 |
| N-470 | 669 | 669 | |
| N-565 | 31,902 | 32,000 | 98 |
| N-600/600K | 64,711 | 64,711 | |
| Total | 5,991,362 | 5,577,045 | (414,317) |

*Figure 9.*

---

[64] 2007 IEFA Review at 115; 72 Fed. Reg. 4888 at 4904. The unit cost for different forms is different because USCIS orders different checks depending on the form. For example, "USCIS only use FBI Name Checks for about ten immigration benefit requests, like permanent residence and naturalization forms." USCIS, *FY 2022-2023 IEFA Fee Review Model Documentation* at 14 (Jan. 2023) (hereinafter "2023 IEFA Documentation"), available at https://www.regulations.gov/document/USCIS-2021-0010-0030.

[65] Similarly, in 2010, USCIS explained that the biometric fee "estimate is tied to the projected volumes of applications and petitions that require biometric services." 2010 IEFA Review at 75.

47.     In 2016, the sum of the projected volumes for those applications and petitions requiring the payment of the biometric fee roughly equaled USCIS's projected biometrics workload volume.[66] In other words, even in 2016, when reuses were indisputably occurring, USCIS calculated the cost of its workload by assuming that new biometrics and background checks would be obtained for each application and that no reuses would occur. Had USCIS taken into account reuse, the biometric projections would have been lower than the sum of the application projections by about 2 million per year.

48.     USCIS finally took reuses into account when it attempted to enact the never-implemented and now-abandoned 2020 rule. For the first time ever, USCIS acknowledged that "there is not always a one-to-one relationship between a specific benefit request [*i.e.*, application] and a biometric service" and specifically admitted that it "may not require a new biometric collection at an ASC location" each time an application is submitted.[67] Moreover, when describing the current biometric fee, USCIS explained that this fee was actually composed of "four separate costs: [1] FBI Name Checks; [2] FBI fingerprints; [3] Application Support Center (ASC) contractual support; and [4] Biometric service management overall, including federal employees at the ASC locations."[68] USCIS's never-implemented and now-abandoned 2020 rule would have disaggregated this single biometric fee into its four constituent parts and charged only the costs that were actually incurred in connection with an application. In other words, the never-implemented and now-abandoned 2020 rule would have been the first time that USCIS set biometric fees in a way that would "*actually correspond* to the services provided."[69]

---

[66] *See* 81 Fed. Reg. 26904 at 26923 ("Table 4 – Workload Volume Comparison"); 26924 ("Table 5 – Fee-Paying Volume Comparison").
[67] 84 Fed. Reg. 62280 at 62302. In its most recent, not-yet-finalized rulemaking on the biometric fee, initiated in 2023, USCIS made this same admission. *See* 88 Fed. Reg. 402 at 484.
[68] 84 Fed. Reg. 62280 at 62302; *see also* 88 Fed. Reg. 402 at 484 (same). USCIS also confirmed that these four costs were "distinct activities in the ABC model." 84 Fed. Reg. 62280 at 62302; *see also* 88 Fed. Reg. 402 at 484 (same).
[69] 85 Fed. Reg. 46788 at 46892.

49.     In 2023, USCIS again attempted to enact a new biometric fee. This most recent rulemaking, which has not yet been finalized, followed the disaggregated approach first proposed in 2020.[70]

50.     The biometric-related costs disclosed by USCIS in its 2020 and 2023 rulemakings reveal that the biometric fee currently charged by USCIS should be closer to $55, not $85. In its 2023 rulemaking, USCIS assigned the Perform Biometrics Services activity a cost of $191.9 million for 2022/2023.[71]

**Appendix Table 2: Projected IEFA Costs by Activity (Dollars in Millions)**

| Activity | FY 2016/2017 Average | FY 2022/2023 Average | Difference | % Difference |
|---|---|---|---|---|
| Certify Nonexistence | N/A | $1.4 | N/A | N/A |
| Conduct TECS Check | $53.4 | $131.4 | $78.0 | 146% |
| Direct Costs | $57.5 | $116.8 | $59.4 | 103% |
| Fraud Detection and Prevention | $178.5 | $335.4 | $156.9 | 88% |
| Inform the Public | $284.9 | $319.8 | $34.8 | 12% |
| Intake | $93.9 | $127.5 | $33.5 | 36% |
| Issue Document | $32.3 | $46.8 | $14.5 | 45% |
| Make Determination | $1,285.5 | $1,876.8 | $591.2 | 46% |
| Management and Oversight | $590.2 | $1,266.3 | $676.1 | 115% |
| Perform Biometrics Services | $196.3 | $191.9 | -$4.3 | -2% |
|    Manage Biometric Services | N/A | $46.4 | N/A | N/A |
|    Capture Biometric Data | N/A | $38.7 | N/A | N/A |
|    Check Fingerprints | N/A | $39.6 | N/A | N/A |
|    Check Name | N/A | $67.2 | N/A | N/A |
| Records Management | $239.5 | $257.8 | $18.3 | 8% |
| Research Genealogy | N/A | $1.9 | N/A | N/A |
| Systematic Alien Verification for Entitlements | $25.7 | $51.1 | $25.4 | 99% |
| Subtotal before Asylum Processing IFR | $3,037.8 | $4,724.8 | $1,683.8 | 55% |
| Asylum Processing IFR | N/A | $425.9 | N/A | N/A |
| Total with Asylum Processing IFR | $3,037.8 | $5,150.7 | $2,112.9 | 70% |

*Figure 10.*

Although USCIS did not provide an estimate of the number of applicants expected to pay the biometric fee in 2023, that number can be approximated using USCIS's disclosures from its 2016 rulemaking. Applying the same proportion of fee-paying applications to total biometric-impacted

---

[70] 88 Fed. Reg. 402 at 484.
[71] 2023 IEFA Review at 32.

applications results in approximately 3.47 million fee-paying applicants in 2023.[72] Thus, USCIS's own projected 2023 cost for biometric services corresponds to a per-application biometric fee of only $55.36 (*i.e.*, $191.9 million divided by 3.47 million fee-paying applicants). The same calculation applied to USCIS's own projected 2020 cost for biometric services results in a per-application biometric fee of $55.24 (*i.e.*, $225.6 million divided by 4.08 million fee-paying applicants).[73]

### *4. USCIS charges the biometric fee in violation of 8 C.F.R. § 103.7(b)(1)(i)(C) when it does not re-collect biometrics or when it does not re-order the FBI background check.*

51.     Additionally, USCIS violates its own implementing regulation for biometric fees when it charges applicants the $85 biometrics fee without re-collecting biometrics or performing new FBI background checks.

52.     The $85 biometric fee currently charged by USCIS is based on the following 2016 regulation:

> (C) Biometric services fee. For capturing, storing, and using biometric information (Biometric Fee). A service fee of $85 will be charged to pay for background checks and have their biometric information captured, stored, and used for any individual who is required to submit biometric information for an application, petition, or other request for certain immigration and naturalization benefits (other than asylum or refugee status) or actions. . . .

8 C.F.R. § 103.7(b)(1)(i)(C) (Oct. 1, 2020).

53.     This regulation requires that, in exchange for the $85 fee, USCIS "pay for background checks" and "capture[] . . . biometric information" for the paying applicant. But as

---

[72] In 2016, USCIS's cost analysis assumed 2,598,639 fee-paying applications and 3,028,254 total biometric-related applications. 81 Fed. Reg. 26904 at 26923, 26924. Applying this ratio to 4,039,776, which is the best estimate of total biometric-related applications Plaintiffs were able to derive from USCIS's 2023 data, *see* 88 Fed. Reg. 402 at 434-437, 439-42, results in a 2023 fee-paying volume of 3,466,658 applications. USCIS allocated $191.9 million to the "Perform Biometrics Services" activity. *Id.* at 518.

[73] Based on USCIS's 2020 data, Plaintiffs were able to derive a 4,759,596 total of biometric-related applications. *See* 84 Fed. Reg. 62280 at 62289-91. Applying USCIS's 2016 ratio to 4,759,596 total biometric-related applications results in a 2020 fee-paying volume of 4,084,357 applications. USCIS allocated $225.6 million to the "Perform Biometrics Services" activity. *Id.* at 62324.

discussed above, USCIS does not collect biometrics for around 2 million applicants yearly and does not order FBI background checks when a previous check was conducted within the last 15 months.

54.     These practices contravene the plain language of § 103.7. The regulation is titled "Biometric services fee. For *capturing*, storing, _and_ *using* biometric information (Biometric Fee)" (emphasis added). It states that "[a] service fee of $85 will be *charged to pay for background checks _and_ have their biometric information captured*, stored, _and_ used for any individual who is required to submit biometric information for an application" (emphasis added).

55.     As discussed above, USCIS has justified the $85 fee in large part by pointing to the costs of collecting biometrics at the ASC and to the costs of paying for background checks. USCIS has explained that 49.7% of the $85 fee would be used to pay for "operating the Application Support Centers to electronically capture immigrants' fingerprints, photographs, and signatures" and that 36.2% of the fee would be used to pay for the FBI background checks.[74] In sum, a whopping 86% of the costs that USCIS has cited to justify the $85 biometric fee is associated with two biometric services that USCIS routinely fails to provide.

56.     Further, as described above, USCIS did not account for reusing previously collected biometrics and/or prior background checks when setting the current biometric fee at $85. USCIS's 2016 rulemaking assumes that USCIS will collect biometrics and pay for background checks every time the fee is paid. When the biometric fee charged does not correspond to the services USCIS actually provides, that fee is inconsistent with its implementing regulation, and USCIS lacks authority to require its payment.

---

[74] 72 Fed. Reg. 4888 at 4906 ($74 plus $12.5 million out of $174 million).

11915636v1/017867

CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this class action under Rule 23(b)(3) of the Federal Rules of Civil

Procedure.

58.    Plaintiffs seek certification of the following three classes:

I.    *The Fee Class*. All individuals and entities who have paid the $85 biometric fee in the past six years.

II.    *The Biometrics Class*. All individuals and entities who have paid the $85 biometric fee in the past six years and for whom USCIS did not collect biometrics.

III.    *The Background Check Class*. All individuals and entities who have paid the $85 biometric fee in the past six years and for whom USCIS did not order an FBI background check.

59.    Excluded from all three proposed classes are class counsel, any judicial officers and

staff presiding over this action, and any employees of USCIS.

60.    Plaintiffs are members of each of the three proposed classes.

61.    The proposed classes are so numerous that joinder of all members is impractical.

While the exact number and identity of class members is unknown to Plaintiffs at this time and

can only be ascertained through appropriate discovery, USCIS's published statistics suggest that

the number of class members is approximately (1) 10 million for the Fee Class, (2) 12 million for

the Biometrics Class, and (3) 2.5 million for the Background Check Class.

62.    There are questions of law and fact common to all members of the proposed classes.

Those common questions include, but are not limited to, the following:

63.    *The Fee Class*.

a.    Did USCIS charge the $85 biometric fee in violation of 8 U.S.C. § 1356?

b.    What is the measure of damages for the excessive fees charged?

64.    *The Biometrics Class*.

a.    Did USCIS charge the $85 biometric fee in violation of 8 C.F.R. § 103.7 when it did not collect biometrics from the paying applicant?

b.   What is the measure of damages for the excessive fees charged?

65.   *The Background Check Class*.

a.   Did USCIS charge the $85 biometric fee in violation of 8 C.F.R. § 103.7 when it did not order an FBI background check for the paying applicant?

b.   What is the measure of damages for the excessive fees charged?

66.   Plaintiffs' claims are typical of the claims of the proposed classes because they, like the class members, paid the biometric fee, received at least one Biometric Notice, and USCIS likely did not order a new FBI background check for them.

67.   Plaintiffs will fairly and adequately protect the interests of the proposed classes because each of them has paid the biometric fee, and for each of them, USCIS did not collect the biometrics and likely did not order a new FBI background check for them.

68.   The questions of law or fact common to the members of the proposed classes predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for fairly and efficiently adjudicating these claims. Joinder of all members is impracticable. Furthermore, because the injury suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the proposed classes to individually redress the wrongs done to them. This action does not present any undue difficulties that would impede its management by the Court as a class action.

69.   Plaintiffs have retained attorneys who are knowledgeable regarding immigration laws and USCIS regulations and are experienced in class action and complex litigation.

11915636v1/017867

**FIRST CLAIM FOR RELIEF: ILLEGAL EXACTION IN VIOLATION OF 8 U.S.C. § 1356**

70.     Plaintiffs reallege and incorporate all allegations of this complaint as if fully set forth herein.

71.     Plaintiffs bring this case under the Little Tucker Act, 28 U.S.C. § 1346(a), which waives sovereign immunity and "provides jurisdiction to recover an illegal exaction by government officials." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–74 (Fed. Cir. 1996). Courts have long recognized such an "illegal exaction" claim—*i.e.*, a claim that money was "improperly paid, exacted, or taken from the claimant" in violation of a statute. *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1345 (Fed. Cir. 2020) (allowing an illegal exaction claim for PACER fees set in contravention of a statute).

72.     The Federal Circuit has held that a fee-authorizing statute or regulation "provide[s] '*by necessary implication*' that the remedy for its violation is the *return of money unlawfully exacted*." *Nat'l Veterans*, 968 F.3d at 1348 (emphasis added). "When the government has the citizen's money in its pocket, the Tucker Act permits suit to recover the money exacted" regardless of whether the law provides for an explicit cause of action. *Id.* (quotation marks omitted). Otherwise, as another court has explained, "the Government could assess any fee or payment it wants from a plaintiff acting under the color of a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the Government, and the plaintiff would have no recourse." *N. Cal. Power Agency v. United States*, 122 Fed. Cl. 111, 116 (2015).

73.     Here, each instance in which USCIS charged the inflated $85 biometric fee constitutes a separate instance of illegal exaction. These biometric fees exceeded the amount that USCIS can lawfully charge under 8 U.S.C. § 1356(m) or any other statutory authority because the $85 fee was set much higher than the level that would "ensure recovery of the full costs of providing all [USCIS] services" that USCIS itself allocates to the biometric fee.

74.     Plaintiffs and the proposed Fee Class are entitled to the return of the $85 biometric fees that USCIS charged in contravention of its statutory authority.

### SECOND CLAIM FOR RELIEF: ILLEGAL EXACTION IN VIOLATION OF 8 C.F.R. § 103.7 BY FAILING TO COLLECT BIOMETRICS

75.     Plaintiffs reallege and incorporate all allegations of this complaint as if fully set forth herein.

76.     Courts have also recognized the validity of illegal exaction claims premised on violations of agency regulations. *See Honeywell Int'l Inc. v. United States*, 142 Fed. Cl. 91, 93 (2019) (granting an illegal exaction claim for excess inspection fees in contravention of a regulation).

77.     Each instance in which USCIS charged the $85 biometric fee but did not collect the applicant's biometrics constitutes a separate instance of illegal exaction. Because USCIS did not perform all the services the fee-authorizing regulation mandates, USCIS collected the fee in contravention of 8 C.F.R. § 103.7 and any other regulatory authority.

78.     Plaintiffs and the proposed Biometrics Class are entitled to the return of the $85 biometric fees that USCIS charged in contravention of its regulatory authority.

### THIRD CLAIM FOR RELIEF: ILLEGAL EXACTION IN VIOLATION OF 8 C.F.R. § 103.7 BY FAILING TO ORDER AN FBI BACKGROUND CHECK

79.     Plaintiffs reallege and incorporate all allegations of this complaint as if fully set forth herein.

80.     Each instance in which USCIS charged the $85 biometric fee but did not order an FBI background check constitutes a separate instance of illegal exaction. Because USCIS did not perform all the services the fee-authorizing regulation mandates, USCIS collected the fee in contravention of 8 C.F.R. § 103.7 and any other regulatory authority.

11915636v1/017867

81.     Plaintiffs and the proposed Background Check Class are entitled to the return of the $85 biometric fees that USCIS charged in contravention of its regulatory authority.

### PRAYER FOR RELIEF

Plaintiffs request that the Court:

a.     Certify all three proposed classes under Federal Rule of Civil Procedure 23(b)(3);

b.     Declare that the $85 biometric fee is excessive;

c.     Declare that USCIS improperly charged the $85 biometric fee when it did not collect the paying applicant's biometric information;

d.     Declare that USCIS improperly charged the $85 biometric fee when it did not order an FBI background check for the paying applicant;

e.     Award monetary relief for any biometric fee collected by USCIS in contravention of 8 U.S.C. § 1356;

f.     Award monetary relief for any biometric fee collected by USCIS in contravention of 8 C.F.R. § 103.7;

g.     Award any applicable pre- and post-judgment interest;

h.     Award Plaintiffs their costs and attorneys' fees under 28 U.S.C. § 2412 and/or from a common fund; and

i.     Award all other appropriate relief.

11915636v1/017867

Dated: November 8, 2023

Respectfully submitted,

*/s/ Geng Chen*
Geng Chen (SDNY Bar No. GC2733)
Beatrice C. Franklin (SDNY Bar No. BF1066)
Dinis Cheian (*pro hac vice* to be submitted)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel:    212-336-8330
Fax:    212-336-8340
GChen@susmangodfrey.com
BFranklin@susmangodfrey.com
DCheian@susmangodfrey.com

***Attorneys for Plaintiffs***

11915636v1/017867